IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Jerry Word, )<br>          Plaintiff, )<br>     vs. )<br>U. S. Probation Department, )<br>          Defendant. ) | Civil Action No. 3:05-2689-GRA-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the plaintiff's "Petition for Temporary Restraining Order and Preliminary Injunction Pending Petition for Writ of Habeas Corpus." The action is construed not as a habeas action, but as a civil rights action challenging the constitutionality of the Justice for All Act of 2004 ("2004 DNA Act") and the lawfulness of application of the 2004 DNA Act to the plaintiff.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Congress passed the Violent Crime Control and Law Enforcement Act ("Crime Control Act") in 1994.

> The Crime Control Act authorized the Federal Bureau of Investigation ("FBI") to establish an index of DNA samples from individuals convicted of crimes, from crime scenes, and from unidentified human remains. 42 U.S.C. § 14132(a)(1). In response, the FBI created the Combined DNA Index System (CODIS).  CODIS "allows State and local forensics laboratories to exchange and compare DNA profiles electronically in an attempt to link evidence from crime scenes for which there are no suspects to DNA samples of convicted offenders on file in the system."  H.R. REP. 106-900(I), at 8 (2000).

*U.S. v. Sczubelek*, 402 F.3d 175 (3rd Cir. March 21, 2005). The DNA Analysis Backlog Elimination Act of 2000 ("2000 DNA Act") authorized the collection of DNA samples from federal prisoners, parolees, and probationers who had been convicted of a limited number of offenses, including murder, sexual abuse, sexual exploitation or abuse of children, and robbery or burglary. *U.S. v. Rodriguez-Benavides*, No. 05-10109, 2005 WL 2077761 (4th Cir. Aug. 30, 2005). The 2004 DNA Act amended the 2000 DNA Act to expand the list of qualifying offenses for collection of DNA samples to include any felony, any offense under chapter 109A of Title 18, any crime of violence, and any attempt or conspiracy to commit any of those offenses. *See* 42 U.S.C. §14135a(d). Title 42, United States Code, Section 14135a sets forth the procedures for collection and analysis of the DNA samples.[1]

---

[1]The Act provides in pertinent part:

> Collection and use of DNA identification information from certain Federal offenders
> (a) Collection of DNA samples
> ***
> (2) From individuals on release, parole, or probation
> The probation office responsible for the supervision under Federal law of an individual on probation, parole, or supervised release shall collect a DNA sample from each such individual who is, or has been, convicted of a qualifying Federal offense (as determined under subsection (d) of this section) . . . .
> ***
> (4) Collection procedures
> (A) The Director of the Bureau of Prisons or the probation office responsible (as applicable) may use or authorize the use of such means as are reasonably necessary to detain, restrain, and collect a DNA sample from an individual who refuses to cooperate in the collection of the sample. . . .
>
> (5) Criminal penalty
> An individual from whom the collection of a DNA sample is authorized under this subsection who fails to cooperate in the collection of that sample shall be–
> (A) guilty of a class A misdemeanor; and
> (B) punished in accordance with Title 18.
>
> (b) Analysis and use of samples
> The Director of the Bureau of Prisons or the probation office responsible (as applicable) shall furnish each DNA sample collected under subsection (a) of this section to the Director of the Federal Bureau of Investigation, who shall carry out a DNA analysis on each such DNA sample and include the results in [the Combined DNA Index System] CODIS.
> ***
> (d) Qualifying Federal offenses
> The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses, as determined by the Attorney General:
> (1) Any felony.
> (2) Any offense under chapter 109A of Title 18.
> (3) Any crime of violence (as that term is defined in section 16 of Title 18.
> (4) Any attempt or conspiracy to commit any of the offenses in paragraphs (1) through (3).

42 U.S.C. §14135a.

The plaintiff was convicted in the District Court for the Eastern District of Michigan in 1997 of a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm).  He was sentenced to 10 years confinement and three years supervised release.  The plaintiff was released from confinement on March 8, 2005, and was "placed under the supervision of the United States Probation Department for the District of South Carolina" (pet. at 2).  On September 6, 2005, the Probation Office notified the plaintiff by letter that pursuant to the 2004 DNA Act he was required to provide a DNA sample.  The plaintiff was directed to report to the United States Probation Office in Columbia, South Carolina, on September 23, 2005, to provide a blood sample (pet., ex. 1).  The plaintiff responded to the Probation Office by letter dated September 8, 2005 (pet., ex. 2).  In that letter, the plaintiff stated that he felt the requirement of providing a DNA sample violated the *ex post facto* clause and his due process and Fourth Amendment rights (pet., ex. 2).

The plaintiff filed his Petition for Temporary Restraining Order ("TRO") on September 16, 2005.  He states in the petition that he has contacted the American Civil Liberties Union ("ACLU") and the University of South Carolina School of Law, and they have "agreed to assist in the concerns of the matters stated" (pet. at 3); however, the plaintiff is proceeding *pro se* at this time.  He argues that the Act as applied to him violates the *ex post facto* clause as he was convicted and sentenced prior to the passage of the Act.  He further argues that the extraction of the DNA sample violates the Fourth Amendment as it is an unreasonable search and seizure and also violates the Fifth Amendment's Due Process Clause.  Lastly, he argues that the Act violates the Sixth Amendment's Procedural Due Process provision as the Probation Office does not have the authority to collect the DNA sample (pet. at 5).

In determining whether to grant injunctive relief prior to trial, a court must consider four factors:

        (a)      The plaintiff's likelihood of success in the underlying dispute between the parties;

        (b)      whether the plaintiff will suffer irreparable injury if the injunction is not issued;

        (c)      the injury to the defendant if the injunction is issued; and

        (d)      the public interest.

*Scotts Company v. United Industries Corporation*, 315 F.3d 264, 271 (4th Cir.2002) (citing *Blackwelder Furniture Co. V. Seilig Manufacturing Co.*, 550 F.2d 189, 193-95 (1977)). The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction were to be denied; if so, then the court must balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the injunction were issued. *Id.* (citing *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991)).

> If the balance of the hardships "tips decidedly in favor of the plaintiff," *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991) (internal quotation marks omitted), then typically it will "be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation," *Blackwelder*, 550 F.2d at 195 (internal quotation marks omitted). But if the balance of hardships is substantially equal as between the plaintiff and defendant, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success." *Direx*, 952 F.2d at 808 (internal quotation marks omitted).

*Scotts*, 315 F.3d at 271(footnote omitted).

The plaintiff has not made a strong showing that he will suffer irreparable injury if the TRO is not issued. He alleges that the DNA sample "will violate and corrupt the blood of [his] full lineage and blood line forever" and notes his concern with regard to allowing the "Government to possess ones DNA because we do not know what they will do with it, nor do we as citizens know the full applications and technology of the DNA science

4

at this point or the future" (pet. at 4-5). It appears to this court that should the plaintiff succeed on his claims, any injury to the plaintiff could be remedied by having the sample removed from the database.

Balancing the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the TRO is issued also requires consideration of the public interest factor. As described by the Third Circuit Court of Appeals in its analysis of the constitutionality of the 2000 DNA Act for Fourth Amendment purposes, "the intrusion of a blood test is minimal." *U.S. v. Sczubelek*, 402 F.3d 175, 184 (3rd Cir. 2005) (citing *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 625 (1989)). Further, "[w]hile this slight intrusion into an ordinary citizen's privacy is unconstitutional, individuals on supervised release . . . 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Id.* (quoting *U.S. v. Knights,* 534 U.S. 112, 119 (2001)). However, with regard to the injury to the defendant if the TRO is issued,

> the government has a compelling interest in the collection of identifying information of criminal offenders. A DNA database promotes increased accuracy in the investigation and prosecution of criminal cases. It will aid in solving crimes when they occur in the future. Equally important, the DNA samples will help to exculpate individuals who are serving sentences of imprisonment for crimes they did not commit and will help to eliminate individuals from suspect lists when crimes occur.

*Id.* at 185. "Furthermore, the collection of DNA samples will protect society. A recent Attorney General report prepared for Congress indicates that at least seven deaths, 89 rapes, 14 rape/deaths, nine sexual assaults, 14 robberies, three assaults, one burglary, and several property crimes could have been prevented had a DNA sample been taken earlier." *Id.* at 186 (citing *National Forensic DNA Study Report*, at 49-66 (Dec. 12, 2003)).

As noted above, when the balance of hardships is substantially equal as between the plaintiff and defendant, then "the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of

5

success." *Direx*, 952 F.2d at 808.  The probability of success factors weighs against granting the TRO.  While neither the United States Supreme Court nor the Fourth Circuit Court of Appeals have addressed the constitutionality of the DNA Act, several courts have upheld challenges similar to the plaintiff's constitutional claims in this action.  *See, e.g. U.S. v. Sczubelek*, 402 F.3d 175, 184 (3rd Cir. 2005) (holding that taking of DNA sample from individual on supervised release, as authorized under the DNA Act, was not unreasonable search under the Fourth Amendment); *Johnson v. Quander*, 370 F.Supp.2d 79, 88-89, 93, 99 (D.C. March 21, 2005) (holding that taking of DNA sample of probationer pursuant to DNA Act and District of Columbia's implementing statute did not violate the Fourth Amendment, procedural due process, Fifth Amendment Equal Protection, nor the *ex post facto* clause, as the statutes do not criminalize any conduct of the plaintiff committed prior to the statutes' enactment and do not inflict any greater punishment for such conduct); *Miller v. U.S. Parole Comm'n*, 259 F.Supp.2d 1166 (D. Kan. 2003) (holding that taking of DNA sample of federal parolee did not violate the Fourth Amendment or the ex post facto clause); *cf. Jones v. Murray*, 962 F.2d 302 (4th Cir. 1992) (holding that Virginia law requiring convicted felons to submit blood samples for DNA analysis did not violate the Fourth Amendment or the ex post facto clause, but further holding the statute violated the *ex post facto* clause to the extent it could be enforced to modify mandatory parole).

Based on the foregoing, it is recommended that the plaintiff's motion for a temporary restraining order be denied.

Bruce H. Hendricks

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

September 21, 2005

Greenville, South Carolina

6